**Esther BIRD and Kenneth Wetcher, M.D., P.A., and Associates, Petitioners,**

v.

**W.C.W., Respondent.**

No. D–3302.

Supreme Court of Texas.

Jan. 5, 1994.

Kathleen Walsh Beirne, Annelie Menke, Alice M. Giessel, Claude B. Masters, M. Karinne McCullough and Gary Don Parish, Houston, for petitioners.

JoAnn Storey and J. Steven Houston, Houston, for respondent.

ENOCH, Justice.

In this case, a psychologist, Esther Bird, examined a child for signs of sexual abuse. After examining the child, the psychologist concluded that the child had been sexually abused and that the natural father, W.C.W., was the abuser. The psychologist then signed an affidavit reporting these conclusions. The affidavit was filed by the child's mother, B.W., in the family court in an effort to modify child custody and visitation orders. All matters, criminal and civil, predicated upon the assertion that the natural father was a child abuser were eventually dropped. The natural father then sued the psychologist and her employer, Kenneth Wetcher, M.D., P.A. & Associates.[1] The question presented is whether the psychologist owed a professional duty of care to the natural father to not negligently misdiagnose the condition of the child. In defense, the psychologist asserts there is no professional duty running to third parties as a matter of law, and regardless, the affidavit asserting the natural father to be the abuser of the child was used as a part of the court litigation process, and consequently, the statement was privileged as a matter of law. The trial court granted summary judgment in favor of Bird and Wetcher. The court of appeals reversed and remanded for trial on the merits. 840 S.W.2d 50 (Tex.App.—Houston [1st Dist.] 1992). We hold that as a matter of law there is no professional duty running from a psychologist to a third party to not negligently misdiagnose a condition of a patient. We further reaffirm that a statement in an affidavit filed as a part of a court proceeding is privileged. Consequently, we reverse the judgment of the court of appeals and render judgment that the plaintiff take nothing.

I.

In 1983 W.C.W. was appointed managing conservator of his son, Jarrad, following a divorce from B.W. W.C.W. moved to Florida in 1986 and temporarily left Jarrad with his maternal grandmother. Shortly before Jarrad was to leave for Florida, his mother reported to Child Protective Services (CPS) that he had indicated his "daddy" had sexually assaulted him. There was an on-going criminal investigation of sexual abuse allegations when the mother was referred to the Wetcher Clinic, a crisis management service. There, Bird examined Jarrad and interviewed the mother and her common law husband, D.R. Bird suspected that Jarrad had been sexually abused. She later executed an affidavit stating that: "I have concluded that Jarrad has been the victim of sexual abuse by his father. . . ." The mother submitted this affidavit to the family district court and sought to change the existing custody order to gain managing conservatorship of Jarrad and terminate the father's custodial rights. The Houston Police Department also filed criminal charges against the father. After the father retained custody and the criminal charges were dismissed, he sued Bird and Wetcher. We note at the outset that while couched in terms of negligent misdiagnosis, the essence of the father's claim is that it was Bird's *communication* of her diagnosis that

---

1. Wetcher is sued under the theory of *respondeat superior* and no independent claim of professional negligence on the part of Wetcher is asserted. However, Wetcher is independently sued for negligent hiring and supervising of Bird. Because of our holding of no liability on the part of Wetcher's employee, there is no basis for independent liability on the part of Wetcher.

caused him emotional harm and related financial damages.[2]

## II.

### DUTY OF A MENTAL–HEALTH PROFESSIONAL

■ First we address whether a mental health professional owes a duty to a parent to not negligently misdiagnose a condition of the child. Liability in negligence is premised on a finding of a duty, a breach of that duty which proximately causes injuries, and damages resulting from that breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Whether a legal duty exists under a set of facts is a question of law. *Id.* In determining whether to impose a duty, this Court must consider the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the actor. *Id.; Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 309 (Tex.1983).

■ We acknowledge that the harm to a parent accused of sexual abuse is foreseeable. However, foreseeability alone is not a sufficient basis for creating a new duty. *Boyles v. Kerr*, 855 S.W.2d 593, 599 (Tex. 1993); *Graff v. Beard*, 858 S.W.2d 918 (Tex. 1993). Psychology is an inexact science. There is an inherent risk that someone might be falsely accused of sexually abusing a child; in such cases, injury is almost certain to result. The magnitude of the burden of guarding against the injury is also uncertain. While mental health professionals may be able to conduct tests to determine whether there is indicia of sexual abuse, the quality of information they can acquire is limited. The child is often the main source of the information, and young children can have difficulty communicating abuse of that nature. Thus, while the risk of injury to an accused parent is real, it is only part of the equation. Furthermore, the risk of an erroneous determination of abuse is ameliorated, in part, by the availability of criminal sanctions against a person who knowingly reports false information in a custody proceeding. *See* TEX. FAM.CODE ANN. § 34.031.

A claimant's right to sue a mental health professional must be considered in light of countervailing concerns, including the social utility of eradicating sexual abuse. Evaluating children to determine whether sexual abuse has occurred is essential to that goal. *See Vineyard v. Kraft*, 828 S.W.2d 248, 251 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Young children's difficulty in communicating sexual abuse heightens the need for experienced mental health professionals to evaluate the child. Because they are dealing with such a sensitive situation, mental health professionals should be allowed to exercise their professional judgment in diagnosing sexual abuse of a child without the judicial imposition of a countervailing duty to third parties.

Two prior cases have found no duty in similar situations. In *Vineyard*, 828 S.W.2d at 251, a father accused of sexually molesting his daughter sued the doctor and the psychotherapist for negligent misdiagnosis and for negligent infliction of emotional harm. The court considered whether a legal duty arises between a parent and a mental health professional who makes an evaluation of a child's condition when child abuse is suspected. *Id.* at 252. The court declined to find a legal duty because there was no physician-patient relationship. *Id.* at 253; *see also, Wilson v. Winsett*, 828 S.W.2d 231, 232–33 (Tex.App.—Amarillo 1992, writ denied) (noting that a physician is liable for malpractice or negligence only when there is a physician-patient relationship); *Fought v. Solce*, 821 S.W.2d 218 (Tex.App.—Houston [1st Dist.] 1991, writ denied) (holding a physician liable for negli-

2. Plaintiff seeks damages for past and future mental anguish, including 1) Injury to his reputation; 2) Public contempt; 3) Ridicule; 4) Loss of relationships; and 5) Loss of self-esteem. He also seeks lost earnings and the expenses he incurred in defending himself before the family and criminal district courts.

gence only where there is a physician-patient relationship); *Armstrong v. Morgan,* 545 S.W.2d 45 (Tex.App.—Texarkana 1986, no writ) (finding fact questions existed regarding duty not to injure person being examined). Here, the father had no physician-patient relationship with Bird or with the Wetcher Clinic. *Fought,* 821 S.W.2d at 220.

The court of appeals in *Dominguez v. Kelly,* 786 S.W.2d 749 (Tex.App.—El Paso 1990, writ denied), reached a similar result. In that case, an employee of the Texas Department of Human Services requested that a minor female be examined by Doctor Kelly. *Id.* at 750. The doctor concluded that there had been sexual abuse.[3] *Id.* The father, Mr. Dominguez, was charged with aggravated sexual abuse. After that charge was dismissed, Mr. Dominguez sued Dr. Kelly for negligence as well as for malicious prosecution.[4] *Id.* at 751. Because there was no physician-patient relationship, the court declined to find a duty. *Id.*

However, one court has concluded that a doctor owed a duty to a third party without the requisite patient-doctor relationship. *Gooden v. Tips,* 651 S.W.2d 364 (Tex.App.—Tyler 1983, no writ). The Goodens were involved in automobile accident with Mrs. Goodpastures. They sued Mrs. Goodpastures' doctor, Dr. Tips, for negligence in failing to warn his patient not to drive while under the influence of the drug Quaalude. *Gooden* noted that "under proper facts, a physician can owe a duty to use reasonable care to protect the driving public where a physician's negligence in diagnosis or treatment of his patient contributes to plaintiff's injuries." *Id.* at 369.

The *Gooden* court focused on the foreseeability of the resulting harm in reversing summary judgment in Dr. Tips' favor. The court held that, under the facts alleged, Dr.

Tips might have a *duty to warn* his patient not to drive. *Id.* at 369–70 (emphasis supplied). That limited duty does not, however, extend to this case. There is little social utility in failing to warn patients about known side-effects of a drug, but there is great social utility in encouraging mental health professionals to assist in the examination and diagnosis of sexual abuse. Furthermore, in *Gooden* the plaintiff was harmed by the resulting actions of the patient, not by the condition, treatment, or diagnosis of the patient.

We hold that summary judgment was proper in favor of Bird because she owed no professional duty to the father to not negligently misdiagnose the condition of the child.

## III.

### PRIVILEGE FOR STATEMENT IN AFFIDAVIT

■ Although we have concluded that there is no professional duty owed to one other than the patient to not negligently misdiagnose a condition, we must still address the defensive issue raised by Bird, whether the communication of her conclusion that the father was the abuser by way of affidavit to the family court was privileged. Bird has not asserted, and the record does not show, that identifying or communicating the identity of the perpetrator of the abuse was part of Jarrad's diagnosis or treatment.

Bird's expertise was required to diagnose whether abuse had occurred and she had a duty to report any suspected abuse. *See* TEX.FAM.CODE ANN. § 34.01 (requiring professionals to report suspected abuse of a child). However, the record does not demonstrate, nor does Bird assert, that identifying the actual perpetrator of the abuse was with-

---

**3.** The opinion does not state that the doctor communicated who committed the abuse. *Dominguez v. Kelly,* 786 S.W.2d 749, 750 (Tex.App.—El Paso 1990, writ denied). The doctor reported that "certain bruises were made by large hands on the [child's] thighs, 'presumably pulling them apart to sexually abuse her.'" *Id.* at 752.

**4.** The opinion notes that there was no evidence of any final determination of the criminal proceedings. *Id.* at 751. However, the aggravated sexual assault charges appear to have been dismissed. Mr. Dominguez pled nolo contendere to a third degree felony of injury to a child. *Id.*

in the purview of her expertise. Likewise, there is no claim or showing that Bird's professional duty to the patient regarding diagnosis of abuse encompassed communicating her conclusions to third parties outside the physician/patient relationship. *See* TEX. FAM.CODE ANN. § 34.02 (calling for non-accusatory reporting of child abuse). A mental health professional's duty might differ, however, if identifying or communicating the identity of the abuser was part of the patient's treatment such as when part of the treatment is to confront the abuser or to solicit the family's assistance in helping the patient cope with the abuse.

Thus, while Bird owed no duty to the father for her diagnosis of Jarrad, the record does not support the contention that she was functioning within a treatment and diagnosis role when she communicated to the family court, via affidavit, her opinion that it was W.C.W. who abused Jarrad. To the contrary, from the record it appears that she acted no differently than any other lay person in *identifying the alleged perpetrator* in that the statement was based, not upon a scientific experiment, but upon the outcry of the child. Like any other person, she thereby subjected herself to liability for defamation unless a privilege attaches to the form of the communication. Although two privileges potentially relieve Bird of liability for the communication made, she has asserted only a privilege for statements made in the course of judicial proceedings.[5]

■ Communications made during the course of judicial proceedings are privileged. *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912–13 (Tex.1942). The privilege also extends to pre-trial proceedings, including affidavits filed with the court.

*James v. Brown*, 637 S.W.2d 914, 916–17 (Tex.1982) (applying the privilege in a defamation action). Bird argues that because the essence of the father's allegations is libel in the context of judicial proceedings, the privilege should apply in this case. We agree.

The privilege afforded against defamation actions is founded on the "theory that the good it accomplishes in protecting the rights of the general public outweighs any wrong or injury which may result to a particular individual." *Reagan*, 166 S.W.2d at 913; *see also Leigh v. Parker*, 740 S.W.2d 101, 103 (Tex.App.—Austin 1987, writ denied) (noting that an action is " 'privileged' if it furthers a policy interest of such importance that one is entitled to protection even at the expense of damage to another"). However, *James*, 637 S.W.2d at 918, declined to expand the privilege beyond libel and slander. *See also City of Brady v. Bennie*, 735 S.W.2d 275, 279 (Tex.App.—Eastland 1987, no writ) (recognizing a "qualified privilege" in an action for tortious interference in connection with a letter written by an attorney during the course of a prior libel suit).

The court in *James* held that the "doctors' *communications* to the court of their diagnosis of Mrs. James' mental condition, regardless of how negligently made, cannot serve as the basis for a defamation action,. . . ." *James*, 637 S.W.2d at 917 (emphasis added). Although in *James* the plaintiff was the patient examined and here Jarrad was the patient examined, not his father, and although W.C.W. asserted a negligence rather than a defamation action, the *James* case and this case are virtually indistinguishable on the issue of privileged communications. The communication made by Bird in this case is privileged. This is especially true here,

5. In addition to the judicial proceedings privilege, the Family Code also affords immunity to those reporting abuse. The Child Abuse Reporting Act requires "[a]ny person having cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect to report" it. TEX.FAM.CODE ANN. § 34.01 *et seq.* (Vernon Supp.1994). Section 34.02 requires the professional to make an oral report to designated authorities within 48 hours, and a written report within 5 days. TEX. FAM.CODE ANN. § 34.02(d). To encourage the reporting of child abuse, the Family Code immunizes persons reporting from civil or criminal liability. TEX.FAM.CODE ANN. § 34.03; *see also* Leota H. Alexander, *Commentary to Chapter 34. Report of Child Abuse*, TEX.TECH.L.REV. 1697, 1707 (1990); TEX.FAM.CODE ANN. § 35.-04.

where the father's damages are basically defamation damages.[6] *See Doe v. Blake*, 809 F.Supp. 1020, 1028 (D.Conn.1992) (extending the privilege beyond defamation actions to avoid the "circumvention [of the policy behind the privilege] by affording an almost equally unrestricted action under a different label").[7]

Any injury caused to W.C.W. by denying him the ability to bring a negligence cause of action for his identification as a child abuser based upon an inaccurate diagnosis of child abuse which is communicated in a court proceeding is outweighed by the need to encourage the reporting of child abuse. The public has a strong interest in protecting children, especially protecting them against physical and sexual abuse. By extending the privilege of in court communication to mental health professionals engaged in examining and diagnosing abuse of children, we further the public's strong interest in helping to eradicate child abuse.[8] Furthermore, the administration of justice requires "full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits." *Id.* at 917; *Leigh*, 740 S.W.2d at 103. We continue to afford a privilege to communications made in the context of a judicial proceeding. Thus, the affidavit Bird submitted to the family court is privileged and defeats the father's negligence claim.

We hold that a mental health professional owes no professional duty of care to a third party to not negligently misdiagnose a condition of a patient. We also hold that a privilege exists for communication of an alleged child abuser's identity in the course of a judicial proceeding whether the accusation was negligently made. Consequently, we reverse the judgment of the court of appeals and render judgment in favor of Bird and Wetcher.

PHILLIPS, C.J., and GONZALEZ, HIGHTOWER and HECHT, JJ. join.

GAMMAGE, Justice, joined by DOGGETT, J., concurring.

Though I concur, today's judgment should not be read as conferring a grant of absolute immunity upon mental health professionals. The opinion concludes that "a privilege exists for communication of an alleged child abuser's identity in the course of a judicial proceeding *whether [or not] the accusation was negligently made.*" Every privilege carries with it a responsibility. If we are to grant mental health professionals the privilege of making such accusations, even if they are not called upon to make them, we also should hold them to an appropriate standard of professional responsibility. Adhering to its duty to recognize changes in the common law, Texas courts have from time to time imposed standards on various occupations. *See, e.g., El Chico Corp. v. Poole*, 732 S.W.2d 306, 308 (Tex.1987); *Otis Engineering Corp. v. Clark*, 668 S.W.2d at 311; *Gooden v. Tips*, 651 S.W.2d at 369.

False accusations of child abuse can be devastating: they destroy reputations, relationships, even lives. Our society faces no problem more serious than child abuse. Though we should give mental health workers in this field some latitude and protection

---

6. *See supra* note 2.

7. In *Doe*, it was the doctor's communication that Doe had ARC, the Aids Related Complex, which was objectionable to the plaintiff, not the doctor's conclusion. *Doe*, 809 F.Supp. at 1028. Thus, the court did not allow the patient to sue the doctor for breach of implied contract or for violation of promissory estoppel arising from the doctor's disclosure of his condition. *Id.* at 1026–28.

In a similar vein, it would be ironic if an individual could avoid all the constitutional restrictions on defamation actions merely by disguising such claim in negligence terms. *See e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also Houston Chronicle Pub. Co. v. Stewart*, 668 S.W.2d 727 (Tex.App.—Houston [1st Dist.] 1984, writ dismissed).

8. The Family Code immunizes persons reporting suspected child abuse from civil or criminal liability. TEX.FAM.CODE ANN. § 34.03. By providing such immunity, the legislature has established a public policy which encourages the reporting of the abuse of a child.

in their efforts to eradicate child abuse, commensurate standards of professional discretion should apply, and failure to adhere to such standards could foreseeably result in their judicial recognition and enforcement.

CORNYN, Justice, joined by SPECTOR, J., concurs with the judgment.

I join the Court's judgment solely for the reason that I agree that Bird's statement, made during the course of judicial proceedings, was privileged.