Easter v. McDonald 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-051-CV

        JERRY EASTER,
                                                                                Relator
        v.

        HONORABLE FRANK G. McDONALD,
        JUDGE PRESIDING, 74TH DISTRICT COURT,
        McLENNAN COUNTY, TEXAS,
                                                                                Respondent
 

 Original Proceeding
                                                                                                    

O P I N I O N
                                                                                                    

          On May 11, 1994, in cause number 10-94-047-CV, we conditionally issued a writ of
mandamus sought by Jerry Easter, Relator, against Honorable Frank G. McDonald, Respondent,
who is sitting as the judge of the 74th District Court. See Easter v. McDonald, 877 S.W.2d 77,
80 (Tex. App.—Waco 1994, orig. proceeding). We ordered Respondent to modify an order by
which Dr. John Wise, Ph.D., was required to turn over to Stanley Turner as Next Friend of Amy
A. Turner, the Real Party in Interest, records made by Dr. Wise during the course of professional
services rendered by him to Relator. Easter's claim was based on the privilege in Rule 510 of the
Rules of Civil Evidence. See Tex. R. Civ. Evid. 510(b), (c). The Supreme Court of Texas,
without addressing the merits of the petition, ordered us to vacate our opinion and order and
suggested that Respondent reconsider his ruling in light of its decision in R.K. v. Ramirez, 887
S.W.2d 836 (Tex. 1994) (orig. proceeding). See McDonald v. Tenth Court of Appeals, 886
S.W.2d 955 (Tex. 1994) (orig. proceeding). On reconsideration, Respondent first upheld Easter's
claim of privilege but, after Turner requested a reconsideration, reversed himself and ordered that
Easter's records be produced by Dr. Wise. Easter again asks that we order Respondent to set
aside the ruling. We decline.
THE SUIT
          Stanley Turner and Cecelia Easter were married from 1971 until 1984. They are the
natural parents of Amy, Tia, Scott, and Bryan. Cecelia and Easter were married from 1985 until
1987. Turner claims that, during that marriage, Easter sexually assaulted Amy. Easter was
professionally counselled by Wise, who also counselled Cecelia and Amy. Easter and Cecelia
remarried in 1988, and Turner alleges that the assaults on Amy continued after Easter counselled
with Wise and after Cecelia and Easter remarried.
          Turner, on behalf of Amy, who is still a minor, brought suit in the 74th District Court
against Easter for the assaults, also alleging negligence, gross negligence, intentional infliction of
emotional distress, and negligent invasion of privacy; against Cecelia alleging negligence, gross
negligence, fraud, intentional infliction of emotional distress, and negligent invasion of privacy;
and against Wise alleging professional negligence, gross negligence, fraud, and intentional
infliction of emotional distress. He seeks $21,700,000 in actual damages and $25,000,000 in
punitive damages.
THE DISCOVERY DISPUTE
          Turner sent a request for production to Wise and Easter requesting all documents that relate
to the treatment of Easter. See Tex. R. Civ. P. 167. Wise objected to the request on the grounds
that his records contain confidential mental health information that is privileged under Rule 510
of the Rules of Civil Evidence. See Tex. R. Civ. Evid. 510(b), (c). Easter asserted his right
against self-incrimination. Turner then sought an order compelling production of the disputed
records. After a hearing on January 6, 1994, Respondent, on February 4, signed an order
generally sustaining Easter's self-incrimination objection. The order also stated that Easter must
provide copies of the documents in compliance with the discovery rules before he could use them
at trial in support of any defense he might offer. On March 16, however, Respondent signed an
order that overruled Wise's objections under the civil evidence rules and ordered that Wise
produce his records with regard to Easter within thirty days. The second order further determined
that Wise's records relating to Amy are discoverable, that his records relating to Cecelia are not
discoverable, and that any reference to Cecelia in Easter's records or in Amy's records should be
deleted.
          As shown above, the matter was again before the court this year. The discovery requests
and objections remained the same and Easter requested an in-camera inspection of the records. 
By letter dated January 27, 1995, after the in-camera inspection, Respondent sustained Easter's
objection. On February 6, Turner amended his petition and requested a reconsideration of the
ruling. On February 22, Respondent signed an order that allowed discovery of Wise's patient
records and billing records relating to Easter and Amy and further provided that references to
Cecelia in both sets of records should be deleted. Easter then filed a second petition for writ of
mandamus.
STANDARDS OF REVIEW
          Our review is governed by the applicable standards of review for original proceedings
seeking writs of mandamus and, in this instance, the interpretation given Rule 510 of the Rules
of Civil Evidence by our Supreme Court.
MANDAMUS
          A writ of mandamus may be issued to correct a "clear abuse of discretion." Walker v.
Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). Issuance of writs of mandamus is
limited to those instances in which no adequate remedy by appeal exists. Id. at 840. A court
abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear
and prejudicial error of law. Id. at 839.
          With respect to the resolution of factual issues or matters committed to the trial court's
discretion, the reviewing court may not substitute its judgment for that of the trial court. Id. The
relator must establish that the trial court could reasonably have reached only one decision. Id. at
840. Even if the reviewing court would have decided the issue differently, it cannot disturb the
trial court's decision unless it is shown to be arbitrary and unreasonable. Id. 
          Review of a trial court's determination of the legal principles controlling its ruling is much
less deferential. Id. A trial court has no "discretion" in determining what the law is or applying
the law to the facts. Id. Thus, a clear failure by the trial court to analyze or apply the law
correctly will constitute an abuse of discretion, and may result in appellate reversal by
extraordinary writ. Id.
RULE 510
          Rule 510 provides for confidentiality of mental health information and sets out various
exceptions. Communications between a professional and a patient "shall not be disclosed." Id.
510(a)(1), (2), (b)(1). Records of the identity, diagnosis, evaluation, or treatment of a patient
"shall not be disclosed." Id. 510(b)(2). The privilege of confidentiality may be claimed by the
patient, a representative of the patient, or by the professional, whose authority to do so is
presumed. Id. 510(c). The Rule provides for exceptions to non-disclosure, including those
communications and records "relevant to an issue of the physical, mental or emotional condition
of a patient in any proceeding in which any party relies upon the condition as a part of the party's
claim or defense." Id. 510(d)(5). In R.K., the Supreme Court observed that the 1988 amendments
to Rule 510 "represent a significant departure from the historical scope of the patient-litigant
exception." R.K., 887 S.W.2d at 842. The exception now terminates the confidentiality privilege
whenever any party relies on the condition of a patient as part of that party's claim or defense,
even when the patient does not personally place the condition at issue or is not a party to the suit. 
Id. 
          This exception to the privilege applies when the records are relevant to a patient's condition
that "relates in a significant way to a party's claim or defense" but not when the condition is
tangential or "merely an evidentiary or intermediate issue of fact." Id. In other words, some legal
consequence must flow from the existence or non-existence of the condition. Id. at 843. 
Generally, the inquiry will be whether the factfinder must make a determination concerning the
issue itself, i.e., whether it is an "ultimate issue for a claim or defense." Id. at 842-43. Courts
should assure that the records sought are closely related in time and scope to the claims made. Id.
at 843. Thus, "access to medical and mental health information will be afforded the non-patient
party only if the patient's condition itself is a fact that carries legal significance and only to the
extent necessary to satisfy the discovery needs of the requesting party." Id. 
APPLICATION OF THE RULE
          At the hearing, Wise testified that Easter, Cecelia, and Amy were his "patients" as the term
is defined in Rule 510. See Tex. R. Civ. Evid. 510(a)(2). He further testified that he prepared
records about Easter that contained "confidential" communications as defined by the Rule. See
id. 510(a)(4). Thus, the privilege of the Rule applies to Easter's communications and records
unless defeated by the exception. See id. 510(d)(5). Turner makes no claim that Easter is making
an "offensive use" of the privilege, a doctrine independent from and unrelated to the privilege
exception in Rule 510. See R.K., 887 S.W.2d at 841. 
          Because the opinion in R.K. discusses the condition about which the records are sought in
terms of whether it is an "ultimate" issue or a "central" issue, one might believe that the types of
issues involved are those that will be actually submitted to the jury. We do not believe that is what
the Court meant; rather, the Court appears to include factual issues that the factfinder might have
to decide in order to decide the questions actually asked of it. The Court held that R.K.'s medical
records were discoverable because the plaintiffs had alleged that another defendant, a hospital, was
negligent in selecting, training, and supervising R.K. Although the factfinder might not be
specifically asked to decide what R.K.'s condition was, it would necessarily have to decide about
the condition in order to decide if the hospital was negligent in some manner due to the condition.
          Here, Turner alleges that Wise was negligent in his diagnosis of Easter and in representing
to Turner that Easter's condition was no threat to Amy. Although the factfinder may not be asked
about Easter's condition, it will necessarily have to determine his condition to decide if Wise was
negligent. Thus, applying the reasoning of R.K., we hold that the Respondent did not abuse his
discretion in ruling that the exception of Rule 510 applies.


 See R.K., 887 S.W.2d at 842-44;
Tex. R. Civ. Evid. 510(d)(5). We need not address other allegations contained in Turner's
current pleading that might support production of the records.
          Under R.K., the Respondent had the duty of determining whether the records were "closely
related in time and scope to the claims made." See R.K., 887 S.W.2d at 843. Having reviewed
the records in camera, we conclude that Respondent could have reasonably determined that they
are closely related in both scope and time. See id.
          Finally, Easter contends that Turner does not have a claim against Wise because there was
no doctor-patient relationship between them. See Bird v. W.C.W., 868 S.W.2d 767, 770 (Tex.
1994) (holding that no professional duty is owed to third parties). This argument overlooks the
fact that Turner brought suit as the next friend of Amy, who did have such a relationship with
Wise.
SELF INCRIMINATION
          Easter also contends that his right against self-incrimination precludes discovery of his
records. He says that the records in the hands of Wise should not be discoverable because that
would defeat the claim of privilege he raised when the request for production was directed to
him—a claim that the court upheld. He claims that statements Wise recorded in his records were
made "in the context of a criminal investigation" as part of an agreement that he would not be
prosecuted if he sought treatment and that they were therefore "compelled testimony." Further,
he argues that he did not waive his right against self-incrimination by making the statements to
Wise because he relied on Rule 510 as it existed prior to the 1988 amendments. According to
Easter, "Whatever the Supreme Court meant to do when it amended Rule 510(d)(5) in 1988, it
could not have meant to do this."
          Respondent replies that Easter's conviction for aggravated sexual assault arising out of
these facts is final, that only "compelled testimonial communications" benefit from the privilege
against self-incrimination, and that, in any event, he would not lose any privilege he may have
because the disclosure will not be voluntary. See Doe v. United States, 487 U.S. 201, 207, 108
S.Ct. 2341, 2345, 101 L.Ed.2d 184 (1988) ("This Court has explained that `the privilege protects
a person only against being incriminated by his own compelled testimonial communications.'");
Bryan v. State, 837 S.W.2d 637, 643 (Tex. Crim. App. 1992) ("The privilege ceases only when
liability to punishment no longer exists."); Easter v. State, 867 S.W.2d 929, 942 (Tex.
App.—Waco 1993, pet. ref'd) (affirming conviction); Carmona v. State, 880 S.W.2d 227, 235
(Tex. App.—Austin 1994, no writ) (recognizing that the provision in Rule 511 for waiver only
applies when information "voluntarily" disclosed and holding waiver occurred by defendant's use
of favorable part of conversation). Easter's response is that the applicable statute of limitations
exposes him to liability for a ten-year period that has not yet expired. See Tex. Code Crim.
Proc. Ann. art. 12.01(2)(D) (Vernon Supp. 1995).
          We believe that Rule 511, virtually identical in the civil and criminal evidence rules,
provides protection against the harm which Easter foresees. See Tex. R. Crim. Evid. 511; Tex.
R. Civ. Evid. 511. By continually objecting to the production of the documents, he will have
prevented a voluntary disclosure. See id.
CONCLUSION
          Because he properly applied the interpretation of Rule 510 given by the Supreme Court in
R.K., we hold that Respondent did not abuse his discretion in ordering Dr. Wise to produce
Easter's mental health records. See R.K., 887 S.W.2d at 842-43; Walker, 827 S.W.2d at 839-40;
Tex. R. Civ. Evid. 510. Easter's petition for writ of mandamus is denied.


                                                                                      BILL VANCE
                                                                                      Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Petition for writ of mandamus denied
Opinion delivered and filed August 2, 1995
Publish