**John DOE**

v.

**Moe BLAKE, et al.**

**Civ. No. H–90–866(PCD).**

United States District Court,
D. Connecticut.

Feb. 29, 1992.

---

**1022**

J.L. Pottenger, Jr., Jerome N. Frank Legal Services Organization, New Haven, CT, for plaintiff.

Richard T. Couture, Steven R. Strom, Asst. Attys. Gen., Hartford, CT, for defendants.

## ORDER

DORSEY, District Judge.

4/29/92: After review and absent objection, the magistrate judge's recommended ruling is affirmed, adopted and ratified. SO ORDERED.

## RECOMMENDED RULING ON DEFENDANTS' MOTION TO DISMISS

MARGOLIS, United States Magistrate Judge.

On October 15, 1990, plaintiff John Doe filed his *pro se* complaint (Dkt. # 1). Court-appointed counsel filed an amended complaint on April 5, 1991 (Dkt. # 14), against various officials and members of the Connecticut Department of Corrections ["DOC"], members of the Fairfield County Sheriff's Department [collectively "the State Defendants"], and members of the Stamford Police Department. On April 17, 1991, the State Defendants filed a motion to dismiss (Dkt. # 17); such motion was granted on May 16, 1991, with respect to any claims made against them in their official capacities.

On July 1, 1991, the State Defendants filed this motion to dismiss the amended complaint in its entirety as to defendants Michael Chernovetz, Raymond Lopes, Edwin Mak, Tony Verrico and David Deleo (Dkt. ## 27–28).[1] The motion also seeks dismissal of certain portions of the amended complaint as it relates to defendants Larry R. Meachum, James McMahon, George Bronson and Dr. Edward Blanchette.[2] Plaintiff filed his brief in partial opposition on September 12, 1991 (Dkt. # 33). Defendants' reply brief was filed on September 24, 1991 (Dkt. # 34). Lengthy oral argument was held on January 30, 1992. Post-argument briefs were filed on February 3, 1992 and February 20, 1992 by defendants and plaintiff, respectively (Dkt. ## 36–37).

For the reasons stated herein, the State Defendants' motion to dismiss is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The factual allegations in plaintiff's amended complaint are as follows: Plaintiff has been a DOC inmate since 1985 and has been diagnosed as being HIV-positive. (Amended Complaint ¶ 4). Plaintiff initially was held at the Bridgeport Correctional Center ["BCC"] and later was transferred to the Connecticut Correctional Institute at Somers ["CCIS"] in October 1985, where he remains today. (*Id.* ¶ 48). Plaintiff alleges his constitutional rights were first violated on July 1, 1985, when wardens and supervisors of all DOC facilities were required to implement a "red dot" policy, which required that a solid red dot be placed on the outside of an inmate's papers whenever an inmate had or was suspected of having a communicable disease such as AIDS and

---

1. Attached as Exh.A was a copy of plaintiff's discovery requests and defendants' production in response, and attached as Exh.B was a transcript of Dr. Blanchette's testimony in *State v. Doe*, Dkt. Nos. 1304–05 (Super.Ct.Stamford Aug. 6, 1985). *See* note 4 *infra* and accompanying text.

 The motion is also filed on behalf of Edwin Mak, even though he is not listed in the caption of defendants or in the amended complaint itself (*see* ¶¶ 5–20). The Court presumes that

Mak is "James Joe," the "unknown" Fairfield County Sheriff (*see* ¶ 13).

2. Although not originally named in this motion, the parties have acknowledged that the recommended ruling will apply with equal force to defendants C. Frank Dennis and Roseanne Walsh, who apparently have not been served yet and thus have no appearance in the file. *See* note 3 *infra*.

was to be transported to or from a DOC facility. (*Id.* ¶ 23 & Exh. D). Defendants terminated this "red dot" policy some time after the initiation of *Doe v. Meachum,* Civil No. H88–562(PCD) ["*Doe I*"]. (*Id.* ¶ 23). In addition to the "red dot" policy, beginning on November 1, 1985, DOC facilities were required to keep a "Carriers of Specific Disease" ["CSD"] list, which identified any inmate as HIV-positive. (*Id.* ¶ 21 & Exhs. A–C). The CSD lists were to be made available to all staff members who might come in contact with HIV-infected inmates. (*Id.* ¶ 21).

Defendant Lopes was Commissioner of DOC when plaintiff first entered BCC in 1985, where defendant Chernovetz was Deputy Warden. (*Id.* ¶¶ 15, 8). It was during Lopes' administration that the "red dot" and CSD list policies were developed. (*Id.* ¶¶ 21, 23). Defendant Chernovetz allegedly helped to implement Lopes' policies. (*Id.* ¶ 8). Defendant Meachum replaced Lopes as Commissioner of DOC in October 1987, and for some time continued to enforce the prior Commissioner's policies. (*Id.* ¶ 17).

Defendant Bronson was the Warden of CCIS when plaintiff was transferred to the institution in October 1985, but since has been replaced. (*Id.* ¶ 7). Defendant Dr. Blanchette is the Medical Director at CCIS and served as the DOC's Acting Director of Health Care Services. (*Id.* ¶ 6). His responsibilities included advising the DOC administration on the policy decisions concerning HIV infection. (*Id.*). Dr. Blanchette examined plaintiff on July 2, 1985, and testified in a court-ordered hearing held in the Stamford Superior Court on August 6, 1985 that plaintiff had AIDS–Related Complex ["ARC"]. (*Id.* ¶¶ 26–27). Defendant McMahon has been the Assistant to the Director of Health Care Services at DOC. (*Id.* ¶ 16). After the resignation of the Director of Health Care Services, McMahon, in conjunction with Dr. Blanchette, was responsible for the health care policy and practice within DOC. (*Id.*)[3]

Defendants Deleo and Verrico were the Fairfield County deputy sheriffs responsible for transporting plaintiff to court in August and September 1985. (*Id.* ¶¶ 9, 18). Upon discovery of the red dot on plaintiff's transport file, they initially refused to transport plaintiff. (*Id.* ¶ 25).

In this action ["*Doe II*"], plaintiff alleges that these defendants acted in violation of the First, Fourth, Eighth, Ninth and Fourteenth Amendments to the United States Constitution (First, Second and Third Counts) and in violation of § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* (Fourth Count). Plaintiff also alleges a pendent state law claim for breach of an implied contract between doctor and patient or for violation of the principles of promissory estoppel (Fifth Count).

## II. DISCUSSION

As the Second Circuit recently observed:

In ruling on a motion to dismiss, a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint. In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. Dismissal of the complaint is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991) (multiple citations omitted). Therefore, in ruling on this motion, the court may consider the attachments to plaintiff's amended complaint, the exhibits to defendants' brief (which largely are incorporated by reference in the amended complaint), as well as the factual and procedural history of *Doe I,* as to

---

3. Defendant Dennis was the Warden at BCC during Summer and early Fall 1985 (*id.* ¶ 10); defendant Walsh was a nurse supervisor at such facility (*id.* ¶ 19). Apparently neither of these defendants has been served yet. *See* note 2 *supra.*

which this judicial officer all too well can take judicial notice.[4]

## A. STATUTE OF LIMITATIONS

The State Defendants' motion largely is based upon the running of the applicable statute of limitations—that because this action was filed on October 15, 1990, all claims based on incidents prior to October 15, 1987 are time-barred. Additional argument is made that the pendent state law claims against defendant Dr. Blanchette should be dismissed.[5] Plaintiff argues that the statute of limitations has been tolled by virtue of *Doe I* and that defendants engaged in a "pattern of continuing violations" which tolls the running of the statute of limitations until the course of conduct is complete.

The "commencement of a class action tolls the applicable statute of limitations as to all members of the class until class certification is denied." *Tosti v. City of Los Angeles,* 754 F.2d 1485, 1488 (9th Cir.1985) (*citing Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 354, 103 S.Ct. 2392, 2398, 76 L.Ed.2d 628 (1983)). *Doe I* was filed on August 15, 1988[6] and the class was certified on January 20, 1989. Once a class has been certified, the statute of limitations begins to run anew from the date when the class member exercises the right to opt out because prior to this time, the class member is deemed to be actively prosecuting his or her rights. *Id.* at 1488. *See also Wood v. Combustion Engineering, Inc.,* 643 F.2d 339, 346–47 (5th Cir. 1981); *Appleton Electric Co. v. Graves Truck Line, Inc.,* 635 F.2d 603, 608–610 (7th Cir.1980), *cert. denied,* 451 U.S. 976, 101 S.Ct. 2058, 68 L.Ed.2d 357 (1981). Plaintiff eventually opted out of *Doe I.* The State Defendants correctly contend that the claims raised in *Doe II* are in some respects more extensive than those at issue in *Doe I.*[7] However, the individual action filed after a class member opts out of a related class action need not be identical in every respect to the class suit for the statute to be tolled. *Tosti,* 754 F.2d at 1489. There can be no dispute that *Doe I* and *Doe II* are "related." Plaintiff does not object to the dismissal of the lawsuit as against defendants Mak, Verrico and Deleo, as they were not specifically named as defendants in *Doe I,* provided that such defendants first comply with the discovery requests pending against them. (*See* Plaintiff's Brief at 2–3). Similarly, the State Defendants concede that *Doe I* tolled the statute of limitations with respect to defendants Meachum,[8] McMahon and Blanchette, to the extent that there is overlap in the claims made in both lawsuits. (*See* State Defendants' Reply Brief at 11).

---

**4.** Rule 12(b)(6) specifically provides that where "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56," provided that all parties have been given reasonable opportunity to present pertinent material under that Rule. The Second Circuit has been harsh in its criticism of district courts which have converted Rule 12(b)(6) motions into Rule 56 motions without adequate notice to the nonmoving parties. *See, e.g., Cortec Industries, Inc. v. Sum Holding L.P.,* 949 F.2d 42, 46–48 (2d Cir.1991) (multiple citations omitted). However, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* at 48.

Such is the case here. The various exhibits to defendants' motion have been discussed both in plaintiff's amended complaint and in his brief in opposition. Thus, plaintiff has had reasonable opportunity to present whatever pertinent material he deemed fit. Thus, defendants' exhibits can be considered by the court irrespective of whether the motion is addressed as one brought under Rule 12(b)(6), *see Allen, supra,* or as one filed under Rule 56, *see Cortec Industries, supra.*

**5.** The State Defendants additionally argued that all claims against Meachum should be dismissed for the period prior to October 1987, when he became Commissioner of DOC. The Court need not address this issue. *See* note 13 *infra.*

**6.** On August 12, 1991, the plaintiffs in *Doe I* filed their Motion for Permission to Prosecute in Fictitious Names; such motion was granted by Judge Cabranes three days later, on August 15, 1988, and the complaint was filed with the Clerk's Office that day. *See* note 11 *infra.*

**7.** *See* note 12 *infra.*

**8.** *See* note 13 *infra.*

Plaintiff further relies upon the "continuing violations" doctrine, which has been applied to § 1983 suits. *Selzer v. Board of Educ. of New York*, 113 F.R.D. 165, 171 (S.D.N.Y.1986) (*citing Association Against Discrimination in Employment v. City of Bridgeport*, 647 F.2d 256, 274–75 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982)). A plaintiff's case will be successful under a "continuing violation" theory only if he or she can show "more than the occurrence of isolated or sporadic acts." *Carr v. Town of Dewey Beach*, 730 F.Supp. 591, 603 (D.Del.1990) (citation omitted). Under this theory, where the last act alleged to be part of the ongoing pattern of discrimination occurs within the filing period, allegations regarding earlier acts are not time-barred. *Id.* In *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir.1981), the Ninth Circuit observed that "[a] continuing violation is occasioned by continuing unlawful acts, not by continued ill effects from the original violation." (citation omitted). However, "[f]or there to be a continuing tort there must be a continuing duty." *Maslauskas v. United States*, 583 F.Supp. 349, 351 (D.Mass.1984). *See also Clulow v. State of Oklahoma*, 700 F.2d 1291, 1300 (10th Cir. 1983). Each defendant will be discussed individually for application of the "continuing violation" theory to him or her.

As previously mentioned, plaintiff concedes that claims against defendants Mak, Verrico and Deleo are barred by the statute of limitations, as they were not named as defendants in *Doe I*. Similarly, Chernovetz was not named as a defendant in *Doe I*, so that such class action did not toll the statute of limitations as against him. Chernovetz was deputy warden at BCC when plaintiff was transferred there in October 1985 (Amended Complaint ¶ 8); plaintiff concedes that his only claim against this defendant is for a continued breach of confidentiality. (*See* Plaintiff's Brief at 20–21). However, the continuing violation doctrine requires more than isolated acts—it requires a duty. Chernovetz did not develop the "red dot" policy [9]; he merely implemented it for a brief (albeit allegedly painful) period in which plaintiff was incarcerated at BCCC, from summer 1985 through October 1985. In plaintiff's factual recitation of the breaches of confidentiality stemming from the "red dot" policy (*see* ¶¶ 23–37), no specific mention is made of any action taken on Chernovetz's part while plaintiff was incarcerated at BCCC. Accordingly, plaintiff has not sufficiently alleged a "continuing violation" by Chernovetz.[10]

Similarly, defendant Lopes was not named as a defendant in *Doe I*, so that the class action did not toll the statute of limitations as against him. Lopes was Commissioner of DOC when plaintiff first entered the Connecticut correctional system, until his replacement by Meachum in October 1987, and was the alleged architect of the "red dot" and CSD list policies. (Amended Complaint ¶¶ 15, 17, 21, 23). Defendant Lopes was not named in plaintiff's original *pro se* complaint in *Doe II*;[11] however, plaintiff argues that Fed.R.Civ.P. 15(c) permits "relation back" to the original complaint. Whether under the version of Rule 15(c) prior to December 1, 1991, as construed in *Schiavone v. Fortune*, 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986), or the newly revised version, effective as of December 1, 1991, "relation back" is not appropriate here, as Lopes did not receive, within the limitations period, such notice of the institution of the action that he would not be prejudiced in maintaining a defense, nor did he know, or should he have known, again within the limitations period, that but for a mistake concerning the proper identity of the prop-

---

**9.** As alleged in the complaint, the CSD list policy was not developed until November 1, 1985 (¶ 21), which is one month after plaintiff left BCCC.

**10.** The same conclusion holds true with respect to defendants Dennis and Walsh as well. *See* notes 2–3 *supra*.

**11.** The parties dispute whether the statute of limitations begins to run on August 30, 1990, the date appearing on plaintiff's unsigned *pro se* complaint, or on October 15, 1990, when it was filed with the Clerk's Office in Hartford. The Court need not resolve that issue now.

er party, the action would have been brought against him.

■ In the same vein, defendant Bronson also was not named as a defendant in *Doe I*, so that that action did not toll the running of the statute of limitations against him. Bronson served as Warden of CCIS when plaintiff arrived there in October 1985. (Amended Complaint ¶ 7). Plaintiff asserts that Bronson is a "continuing violator," in light of his personal involvement in AIDS-related matters and in his supervisory capacity. (*See* Plaintiff's Brief at 24–25). However, as in the case of Chernovetz, there is no discussion in the Amended Complaint as to any specific actions, or inactions, taken by Bronson. As such, plaintiff has failed to allege any "continuing violation" on his part.

As previously mentioned, the State Defendants acknowledge that the statute of limitations was tolled for defendants Meachum, McMahon and Blanchette, all of whom were named in *Doe I*, to the extent that the claims made in *Doe II* overlap with those made in *Doe I*. (*See* Defendants' Reply Brief at 11).[12] Thus, plaintiff may assert these additional claims only if the "continuing violation" doctrine were to apply here.[13]

■ Defendant Dr. Blanchette has served in various capacities within DOC with respect to AIDS issues—he is Medical Director at CCIS, he was Acting Director of Health Care Services for which he was the primary DOC physician advising defendants Meachum and Bronson on policy issues with respect to AIDS, he served as medical consultant for other DOC facilities

regarding HIV-infected inmates, and he served on DOC's "Departmental AIDS Committee." (Amended Complaint ¶ 6). Plaintiff alleges that any claims against this defendant for events prior to August 12, 1985,[14] are part of this defendant's "continuing violation." (*See* Plaintiff's Brief at 25). Defendants argue that the only claims against Dr. Blanchette for the period prior to August 6, 1985 was his testimony in court, which defendants characterize as "clearly a discrete act." (*See* Defendants' Reply Brief at 9). This is simply not the case, for the claims against this defendant during this period go beyond his court testimony. In addition, contrary to defendants' assertions, Dr. Blanchette's testimony was not unrelated to the other claims made against him by plaintiff; Dr. Blanchette was selected by the Superior Court to examine plaintiff, and to testify about his condition, precisely because he was the most authoritative person within the DOC with respect to AIDS-related issues. As such, plaintiff has successfully alleged a "continuing violation" with respect to Dr. Blanchette.

Defendant McMahon was Assistant to the Director of Health Care Services at DOC and during a period of vacancy of the Director, worked in conjunction with Dr. Blanchette for overall health care policy and practices within DOC. (Amended Complaint ¶ 16). According to plaintiff, defendant McMahon was Acting Director from 1985 until 1987. (*See* Plaintiff's Brief at 24). Plaintiff similarly contends that claims prior to August 12, 1985, can be asserted against him under the "continuing

---

**12.** The additional claims made in *Doe II* that were not asserted in *Doe I* include: plaintiff essentially having been placed in a quarantine at the Stamford Police Station, BCC, and "Hospital 3" at CCIS (Amended Complaint ¶ 33); and plaintiff having been denied access to regular prison programming, including religious services and recreational activities, and having restricted access to the telephone, while at "Hospital 3" (*id.* ¶ 34).

An additional claim in ¶ 34 is that plaintiff had reduced visits from family members. Paragraph 35, which is cited by the State Defendants as also constituting a claim unique to *Doe II* (*see* Defendants' Reply Brief at 11), concerns curtailment or conditioning of work assignments, as

well as difficulties in getting haircuts. All of these claims were made in ¶ 60 of the *Doe I* complaint.

**13.** In their Reply Brief, the State Defendants argue that the "continuing violation" doctrine does not apply to defendants Chernovetz, Walsh, Dennis, Bronson, Blanchette and McMahon (at 2–11); noticably absent from the list and discussion is defendant Meachum. The Magistrate Judge thus assumes that the motion to dismiss has been withdrawn with respect to defendant Meachum.

**14.** *See* note 6 *supra*.

violation" doctrine. While defendants are correct that McMahon is not mentioned anywhere else in the amended complaint other than in ¶ 16 (*see* Defendants' Reply Brief at 8), such doctrine would be applicable here, if indeed this defendant worked closely with Dr. Blanchette in developing the DOC's AIDS policies during this critical two-year period.

Accordingly, with respect to the statute of limitations issues, the State Defendants' motion to dismiss is *granted in part and denied in part* as follows: *granted by agreement with respect to defendants Mak, Verrico, and Deleo*, provided such defendants comply with the outstanding discovery requests against them; *granted with respect to defendants Chernovetz and Lopes; granted with respect to defendant Bronson* to the extent claims are made beyond the three-year statute of limitations; and *denied with respect to defendants Meachum, Blanchette, and McMahon.*

## B. PENDENT STATE CLAIMS

■ As previously mentioned, plaintiff's Fifth Count is against Dr. Blanchette for breach of an implied contract between doctor and patient and/or for violation of the principles of promissory estoppel. Dr. Blanchette has moved to dismiss this count on six grounds: (1) it would be inappropriate to exercise pendent state jurisdiction here; (2) the court should abstain from ruling upon an unsettled issue of state law; (3) plaintiff's claim is barred by having failed to file his claim with the Claims Commissioner; (4) Connecticut did not recognize a common-law privilege in 1985; (5) Dr. Blanchette's courtroom testimony was absolutely privileged; and (6) plaintiff waived his privilege at the court-ordered hearing. The Court need only address the last three arguments.

The Connecticut General Assembly did not codify the doctor-patient privilege until 1990. *See* Conn.Gen.Stat. § 52–146o. As the Connecticut Appellate Court has observed, "There is no common law physician-patient privilege and none has been accorded in Connecticut or in federal courts as a general evidentiary principle." *State v. Devanney*, 12 Conn.App. 288, 292, 530 A.2d 650 (1987) (multiple citations omitted). That, however, presents a different issue from whether a patient can assert a cause of action against his or her physician for the disclosure of confidential information gained during the course of treatment. Such a claim was at issue in *MacDonald v. Clinger*, 84 A.D.2d 482, 446 N.Y.S.2d 801 (App.Div.1982), where the plaintiff-patient asserted claims of breach of an implied contract, breach of confidence in violation of public policy, and breach of the right of privacy under New York law, against the defendant-psychiatrist. The court stated:

> Research reveals few cases in American jurisprudence which treat the doctor-patient privilege in this context. That is undoubtedly due to the fact that confidentiality of the relationship is a cardinal rule of the medical profession, faithfully adhered to in most instances, and thus has come to be justifiably relied upon by patients seeking advice and treatment. This physician-patient relationship is contractual in nature, whereby the physician, in agreeing to administer to the patient, impliedly covenants that the disclosure necessary to diagnosis and treatment of the patient's mental or physical condition will be kept in confidence.
>
> Examination of cases which have addressed this problem makes it apparent that courts have immediately recognized a legally compensable injury in such wrongful disclosure based on a variety of grounds for recovery: public policy; right to privacy; breach of contract; breach of fiduciary duty.

446 N.Y.S.2d at 802 (citation omitted). *See also Moses v. McWilliams*, 379 Pa.Super. 150, 549 A.2d 950, 953 n. 4 (1988) ("[A] majority of jurisdictions that have considered the broad issue of whether to recognize a general cause of action for a physician's breach of confidentiality have allowed such a claim."), *app. denied*, 521 Pa. 631, 558 A.2d 532 (1989).

However, defendant is correct that in this unusual context, he should be provided an absolute privilege with respect to his testimony. The Connecticut Supreme

**1028**

Court summarized this privilege, in an action for defamation and intentional infliction of emotional distress, as follows:

> It has long been established that there is an absolute privilege for statements made in judicial proceedings. There is a "long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy." ... "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements."

*Petyan v. Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986) (multiple citations omitted). *See also DeLaurentis v. City of New Haven*, 220 Conn. 225, 262–65, 597 A.2d 807 (1991); *MacDonald v. Atlantic Airlines*, Dkt. No. 241015, 1991 WL 224027, at *2, 1991 Conn.Super. LEXIS 2362, at *1–3 (Super.Ct. Oct. 11, 1991); *Chester v. Willey*, Dkt. No. 374862, 1991 WL 112871, at *2, 1991 Conn.Super. LEXIS 1409, at *3–7 (Super.Ct. June 11, 1991); *Sperry v. Post Publishing Co.*, Dkt. No. 279345, 1991 WL 83997 1991 Conn.Super. LEXIS 901 (Super.Ct. May 1, 1991). The rationale behind this privilege is to protect the witness, particularly one who is subpoenaed to court, who is duty-bound to answer questions if no objection is made or if any objection is overruled by the court. *O'Coin v. Woonsocket Institution Trust Co.*, 535 A.2d 1263, 1267 (R.I.1988) ("[T]he witness cannot be held liable in a civil suit for his answer. To hold otherwise would be manifestly unfair to the witness, who often, but not always is untrained in legal matters, timid, and appears at the behest of some third party.").

This absolute immunity for testimony in court proceedings has been extended to claims beyond those for defamation and intentional infliction of emotional distress. As the court explained in *Moses, supra:*

> If the policy, which in defamation actions affords an absolute privilege or immunity to statements made in judicial and quasi-judicial proceedings is really to mean anything then we must not permit its circumvention by affording an almost equally unrestricted action under a different label.... Maintenance of these kindred causes of action ... would equally restrain the ability of judges, parties, counsel and witnesses to speak and write freely during the course of judicial proceedings.

549 A.2d at 957–58 (citations omitted). *See also Schwarzchild v. Cohen*, Civ. No. N85–13(RCZ), slip op. at 4–6 (D.Conn. Feb. 19, 1986) (recognizing absolute immunity against fraud claim for allegations made in complaint).

Dr. Blanchette testified at the August 6, 1985 hearing, which hearing was ordered by the Superior Court for the purpose of ascertaining "the medical condition of [plaintiff], as well as the consequences to those coming in contact with [plaintiff] during the course of this trial." (Defendants' Exh.B, at 2). The Superior Court Judge took an extremely active role in eliciting information from Dr. Blanchette. (*See, e.g., id.* at 6, 8–13, 14–15, 16–19, 21–25, 30–31, 32–33, 35, 36–37, 40–43). Dr. Blanchette had an obligation to answer the questions posed to him, particularly by the Court. *See O'Coin, supra*, 535 A.2d at 1267. There can be little doubt that Dr. Blanchette's testimony was "in some way pertinent to the subject of the controversy," *Petyan, supra*, 200 Conn. at 246, 510 A.2d 1337, particularly as the scope of the evidentiary hearing was framed by the prosecutor. Thus, Dr. Blanchette is entitled to absolute immunity with respect to the testimony he gave in court on August 6, 1985.

The two additional cases cited by plaintiff at oral argument are addressed in the parties' post-argument briefs—*Levine v. Wiss & Co.*, 97 N.J. 242, 478 A.2d 397 (1984) and *James v. Brown*, 637 S.W.2d 914 (Tex.1982). In *Levine*, a judge in a divorce proceeding appointed the defendants-accountants as impartial experts to examine the books and records of a corporation owned by the husband and to place a value on his interest, in anticipation of an equita-

ble distribution of the marital assets. The parties reached a settlement, after review of defendants' written report. Two years later, however, the parties filed a joint motion to vacate the settlement, which was denied; the court entered a judgement of divorce which incorporated the property settlement. The husband thereafter commenced a malpractice action against the accountants, for having negligently evaluated his business. The New Jersey Supreme Court held that "[a] court-appointment is not a talisman for immunity," 97 N.J. at 252, 478 A.2d 397, and that immunity "should not be available to shield from liability for negligence appraisers and other experts performing limited functions, as part of their regular professional responsibilities, in the context of judicial proceedings." *Id.* at 251, 478 A.2d 397 (citation omitted).

The *James* case concerned an involuntary civil commitment of plaintiff, following an application filed by her children; plaintiff was examined by the three defendants-psychiatrists, all of whom submitted reports to the Probate Court which indicated that plaintiff was mentally ill and posed a danger to herself or others. After being released from the hospital, plaintiff sued the psychiatrists, alleging, *inter alia,* libel and malpractice in their diagnosis of her. The Texas Supreme Court held that while the defendants were entitled to absolute immunity from a claim of defamation with respect to the medical reports written to the Probate Court, 637 S.W.2d at 916–17, the malpractice claims were still actionable: "[Plaintiff] is not prevented from recovering from the doctors for negligent misdiagnosis-medical malpractice merely because their diagnoses were later communicated to a court in the due course of judicial proceedings." *Id.* at 918.

These cases are inapposite here. In their malpractice claims, the plaintiffs in *Levine* and *James* objected to the professional analysis of the defendants, and *not* merely to the defendants' having submitted their expert opinions to the Court. Plaintiff's Fifth Count does not contest the conclusions drawn by Dr. Blanchette, but rather that he relayed those conclusions in open court. Plaintiff's claim does not exist *but for* Dr. Blanchette's public testimony. In contrast, the plaintiffs in *Levine* and *James* could have asserted malpractice claims against the defendants, even if a judge never had read the experts' written submissions.[15]

Defendant Dr. Blanchette's motion to dismiss the Fifth Count is *granted.*

### III. CONCLUSION

Accordingly, the State Defendants' motion to dismiss the complaint is *granted in part and denied in part* to the extent set forth and for the reasons stated in Section II.A. *supra,* and the motion to dismiss the Fifth Count is *granted* for the reasons stated in Section II.B. *supra.*[16]

*See* 28 U.S.C. § 636(b) **(written objections to ruling must be filed within ten days after service of same)**; F.R.Civ.P. 6(a), 6(e) & 72; Rule 2 of the Local Rules for United States Magistrates, United States District Court for the District of Connecticut; *Small v. Secretary, H & HS,* 892 F.2d 15, 16 (2d Cir.1989) **(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

**15.** Moreover, based upon the transcript, it appears that plaintiff, through his counsel, waived whatever privilege he may have had. *See State v. Vennard,* 159 Conn. 385, 406, 270 A.2d 837 (1970) (by having failed to object at trial to the testimony of the psychiatrists who examined him, defendant waived his privilege), *cert. denied,* 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971). Plaintiff never made an objection to the holding of the August 6, 1985 hearing, either at

the trial itself or on appeal. 208 Conn. 52, 55–56, 544 A.2d 611 (1988) ("At no time during the proceedings did [plaintiff] complain of the public nature of this proceeding, nor does he now, on appeal, raise any issue about its propriety.").

**16.** Counsel are to contact the Magistrate Judge's Chambers to arrange a continued status conference, which may be held telephonically.