**Elinor HALPERN, Plaintiff,**

v.

**BRISTOL BOARD OF EDUCATION, Defendant.**

**No. Civ.A. 3:98CV243(CFD).**

United States District Court, D. Connecticut.

March 15, 1999.

Jon L. Schoenhorn, Law Offices of Jon L. Schoenhorn, Hartford, CT, for plaintiff.

Burton Kainen, Vaughn Finn, Shipman & Goodwin, Hartford, CT, for defendant.

### RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DRONEY, District Judge.

#### Introduction

The complaint in this action was filed on February 6, 1998, and seeks damages for violation of 42 U.S.C. § 1983 and breach of an employment contract.[1] It concerns the alleged unlawful termination of the plaintiff's employment on August 30, 1974. The plaintiff and defendant have each filed a motion for summary judgment. For the following reasons, the Court finds that the action is barred by the applicable statutes

---

1. The Court has jurisdiction over the plaintiff's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and exercises supplemental jurisdiction over her claim for breach of employment contract pursuant to 28 U.S.C. § 1367(a).

of limitations and, accordingly, the defendant's motion for summary judgment [**Document** # 7] is **GRANTED** and the plaintiff's motion for summary judgment [**Document** # 11] is **DENIED**.

### Background[2]

On August 21, 1974, the defendant Bristol Board of Education (hereinafter "the Board"), conducted a hearing pursuant to Conn.Gen.Stat. § 10–151(b) to determine whether to terminate the teaching contract of the plaintiff, Elinor Halpern, after eight years of teaching in the Bristol school system.[3] Conn.Gen.Stat. § 10–151 provides notice and hearing requirements for terminating the employment contracts of tenured teachers, such as the plaintiff. In 1974 the statute also provided that, beginning with the fourth year of a teacher's continuous employment, her contract for employment could only be terminated for one of six reasons. *See* Conn.Gen.Stat. § 10–151(b) (1974).[4] On August 30, 1974, the plaintiff was notified that the Board

had "voted to terminate [her] teaching contract immediately." [5]

Conn.Gen.Stat. § 10–151 also provided that "any teacher aggrieved by the decision of a board of education after a hearing as provided in subsection (b) of this section may appeal therefrom, within thirty days of such decision, to the court of common pleas for the county or judicial district in which the board is located." Conn.Gen. Stat. § 10–151(f). On September 27, 1974, the plaintiff filed a complaint in the Connecticut Court of Common Pleas,[6] challenging the Board's decision to terminate her employment. The complaint alleged that the Board's actions violated the plaintiff's rights under Conn.Gen.Stat. § 10–151(b) [7] and denied her due process of law.[8] The complaint requested that the decision of the Board be reversed and the action of the Board be "declared invalid and of no effect." [9] The Court dismissed the plaintiff's action and she then appealed to the Connecticut Supreme Court.

---

2. The recited facts are taken from the parties' Local Rule 9 statements and the materials appended thereto. In addition, the facts and procedural history of this dispute are set forth in several Connecticut Supreme Court opinions. *See Lee v. Board of Education of the City of Bristol*, 181 Conn. 69, 434 A.2d 333 (1980); *Halpern v. Board of Education of the City of Bristol*, 231 Conn. 308, 649 A.2d 534 (1994) "(*Halpern I*)"; *Halpern v. Board of Education*, 196 Conn. 647, 495 A.2d 264 (1985); *Halpern v. Board of Education of the City of Bristol*, 243 Conn. 435, 703 A.2d 1144 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1842, 140 L.Ed.2d 1092 (1998) ("Halpern II").

3. At the time the plaintiff's name was Elinor Lee.

4. As to the procedure for termination, the statute provided, in relevant part: [p]rior to terminating a contract, a board of education shall give the teacher concerned a written notice that termination of [her] contract is under consideration and, upon written request filed by such teacher with such board within five days after the receipt of such notice, shall within the next succeeding five days give such teacher a statement in writing of its reasons therefor. Within twenty days after receipt from a board of education of written

notice that contract termination is under consideration, the teacher concerned may file with such board a written request for a hearing, which such board shall hold a hearing within fifteen days after receipt of such request.

\*\*\*\*

A board of education shall give the teacher concerned its written decision within fifteen days after such hearing, together with a copy of a transcript of the proceedings, which shall be furnished without cost. Conn.Gen.Stat. § 10–151(b).

5. *See* Defendant's Exhibit A, plaintiff's complaint to the Court of Common Pleas action dated September 27, 1974, at pages 1–2.

6. The Connecticut Superior Court is the successor to the Court of Common Pleas.

7. The plaintiff claimed that the statute had been violated because the Board meeting at which her employment was terminated had been improperly called and the final decision of the Board had not been by a majority vote.

8. *See* Defendant's Exhibit A, at page 2.

9. *See* Defendant's Exhibit A, at page 3.

The Connecticut Supreme Court held that the Board violated the plaintiff's Fourteenth Amendment due process rights by failing to state the reasons for its decision to discharge her or the evidence upon which it relied in making that decision. See Lee v. Board of Education of the City of Bristol, 181 Conn. 69, 434 A.2d 333 (1980). The decision of the Court of Common Pleas was reversed and the plaintiff's case was remanded to the Board for further proceedings.

In November, 1980, the Board reconvened and considered the transcript of the 1974 hearing and the exhibits introduced at that time. The Board then reaffirmed the decision to terminate the plaintiff's employment and issued "findings and conclusions". Halpern I, 649 A.2d at 536. On December 4, 1980, the plaintiff appealed the decision of the Board to the Connecticut Superior Court. The complaint filed in that action again challenged the August 30, 1974, original decision of the Board to terminate the plaintiff's employment, as well as the findings and conclusions issued by the Board in 1980. The complaint alleged that the conduct of the Board violated Conn.Gen.Stat. § 10-151, and "the plaintiff's rights to due process of law, as guaranteed by the Fourteenth Amendment to the United States Constitution, and by Article One, § 8 of the Connecticut Constitution." In her prayer for relief the plaintiff requested:

> judgment that the final decision of the Board of Education of Bristol be reversed and that the action of said Board in attempting to terminate the plaintiff's

contract of employment and tenure status be declared invalid and of no effect; and that this matter be remanded to the Board for a determination of the amount of back wages and benefits owed to the plaintiff by the defendant.

The Superior Court rendered judgment in favor of the Board and the plaintiff again appealed to the Connecticut Supreme Court.[10]

The Connecticut Supreme Court held that the plaintiff was not entitled to a new termination hearing. However, because the procedure that the Board had employed following remand in Lee did not allow the plaintiff meaningful participation in the "remediation of her constitutional rights," see Halpern v. Board of Education of the City of Bristol, 231 Conn. 308, 649 A.2d 534 (1994) (Halpern I), the judgment of the Connecticut Superior Court was reversed and vacated and the Superior Court was instructed to remand the matter to the Board for further proceedings. The Connecticut Supreme Court also ordered that the Plaintiff be permitted to file exceptions and present briefs and oral argument "concerning the propriety of the termination" of the plaintiff. 649 A.2d at 538.[11]

Following remand, the Board again met to consider the transcript from the 1974 termination hearing, the exhibits introduced at that time, and the termination of the plaintiff's employment. The Board then submitted a draft of its findings and conclusions to counsel for the plaintiff and invited a written response. On May 8, 1995, the Board heard argument from

---

**10.** While the appeal was pending, the Plaintiff brought another action in the Connecticut Superior Court against the Board seeking a declaratory judgment and writ of mandamus requiring the Board to reinstate her as a teacher. The case was dismissed under the prior pending action doctrine. This decision was affirmed on appeal to the Connecticut Supreme Court in Halpern v. Board of Education, 196 Conn. 647, 495 A.2d 264 (1985).

**11.** Following remand, on November 28, 1994, the plaintiff filed a motion for a hearing on a

back pay award in light of the Supreme Court's decision in Halpern I. The motion requested back pay and benefits from the Board since the plaintiff's termination in 1974 and prospective compensation. According to the motion, the basis for the hearing request was the Connecticut Supreme Court's holding in Halpern I that the plaintiff's employment contract had been terminated in an unconstitutional manner. On January 3, 1995, the motion was denied without opinion.

counsel for the plaintiff and voted unanimously to uphold the termination of the plaintiff's employment.

On June 20, 1995, the plaintiff filed her third complaint in the Connecticut Superior Court. The complaint again challenged the August 30, 1974, decision of the Board, as well as the 1995 findings and conclusions of the Board. The plaintiff alleged that the decision and the manner in which the May 8, 1995, Board meeting was conducted violated Conn.Gen.Stat. § 10–151, the plaintiff's Fourteenth Amendment due process rights, her due process rights under Article One, § 8 of the Connecticut Constitution, and the mandate of the Connecticut Supreme Court in *Halpern I*. In her prayer for relief, the plaintiff requested that,

> the final decision of the Board of Education of Bristol be reversed and that the action of said Board in attempting to terminate plaintiff's contract of employment and tenure status be declared invalid and of no effect, and that this matter be remanded to the Board.

In addition, the plaintiff requested reinstatement to her teaching position.[12] The Connecticut Superior Court dismissed the action and, on appeal to the Connecticut Supreme Court, that decision was affirmed and the state court litigation over the termination of the plaintiff's employment contract was concluded. *See Halpern v. Board of Education of the City of Bristol,* 243 Conn. 435, 703 A.2d 1144 (1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1842, 140 L.Ed.2d 1092 (1998) ("*Halpern II*").

On February 6, 1998, the plaintiff filed her complaint in this court, alleging that the Bristol Board of Education violated her Fourteenth Amendment due process rights and breached her employment contract. She is seeking damages for her loss of salary and benefits, compensatory damages, and attorney's fees.

The Board has moved for summary judgment on the complaint, arguing: (1) the action is barred by the applicable statutes of limitations; (2) the action is barred by the doctrines of res judicata and collateral estoppel; and (3) assuming the action is not so barred, the Board is entitled to judgment based upon the merits of the plaintiff's claims. The plaintiff opposed the defendant's motion and cross-moved for summary judgment.

With respect to the defendant's argument that this action is barred by the applicable statute of limitations, the plaintiff argues that her action did not accrue until the May, 1995, Board vote or until she exhausted all her state appeals of the 1974 Board decision and it became clear that she would not be reinstated as a teacher. Additionally, the plaintiff claims that the actions of the defendant constitutes a continuing violation of her constitutional rights. Because the Court finds that the plaintiff's action is barred by the statutes of limitations, it need not address the other bases for summary judgment raised by the Board.

### Discussion

#### A. Summary Judgment Standard

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. *See* Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A court must grant summary judgment " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. . . .' "

---

**12.** The plaintiff did not request back pay and benefits from 1974 as she had in her second suit in the Connecticut Superior Court. However, on January 20, 1995, over three years prior to the filing of this action, counsel for the plaintiff sent the Board a letter stating that the plaintiff intended to seek full retroactive salary amounts and that she was prepared to pursue the matter in federal court as a violation of civil rights under 42 U.S.C. § 1983 and as a breach of her new contract. *See* Defendant's Exhibit G.

*Miner v. City of Glens Falls,* 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine " 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.) (*quoting Anderson,* 477 U.S. at 248, 106 S.Ct. 2505), *cert. denied,* 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). After discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "The non-movant must do more than present evidence that is merely colorable, conclusory, or speculative and must present 'concrete evidence from which a reasonable juror could return a verdict in his favor ...' " *Alteri v. General Motors Corp.,* 919 F.Supp. 92, 94–95 (N.D.N.Y.1996) (*quoting Anderson,* 477 U.S. at 256, 106 S.Ct. 2505). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich,* 963 F.2d at 523.

B. Statute of Limitations for Actions Under 42 U.S.C. § 1983

"Since 42 U.S.C. § 1983 does not contain a statute of limitations, a federal court applies the period of limitations of the state in which the action is brought." *Deepwells Estates, Inc. v. Incorporated Village of the Head of the Harbor,* 973 F.Supp. 338, 344 (E.D.N.Y.1997) (*citing Wilson v. Garcia,* 471 U.S. 261, 268–269, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)); *see also Williams v. Walsh,* 558 F.2d 667, 670 (2d Cir.1977); *Meyer v. Frank,* 550 F.2d 726, 728 (2d Cir.1977); *Frank v. New York State Electric & Gas,* 871 F.Supp. 167, 172–173 (W.D.N.Y.1994), and *Vitale v. Nuzzo,* 674 F.Supp. 402, 404 (D.Conn.

1986). In this District, "[t]he appropriate borrowed state limitations period is provided by this state's three-year general tort statute, Conn.Gen.Stat. § 52–577." *Nuzzo,* 674 F.Supp. at 404.

The parties agree that the applicable statute of limitations is the three-year general tort statute of limitations set forth in Conn.Gen.Stat. § 52–577.

C. Accrual of an Action Under § 1983

■ Although the applicable statute of limitations for the § 1983 count in this action is the "borrowed" state statute, federal law governs as to when § 1983 claims accrue and when the period of limitations begins to run. *See Veal v. Geraci,* 23 F.3d 722, 724 (2d Cir.1994); *see also Cornwell v. Robinson,* 23 F.3d 694, 703 (2d Cir.1994). The U.S. Court of Appeals for the Second Circuit has held that § 1983 claims accrue when the conduct causes harm and the claimant knows or has reason to know of the conduct and the resulting harm. *Veal,* 23 F.3d at 724; *see also Cornwell,* 23 F.3d at 703; *Deepwells Estates, Inc.,* 973 F.Supp. at 344; and *Frank,* 871 F.Supp. at 173.

■ However, "[t]he reference to knowledge of the injury does not suggest that the statute does not begin to run until the claimant has received judicial verification that the defendant's acts were wrongful." *Veal,* 23 F.3d at 724. In the context of wrongful termination where violations of civil rights are asserted, the limitations period begins to run when the employee receives notice that the adverse decision has been made. *See Frank,* 871 F.Supp. at 173 (*citing Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)). Also, a § 1983 claimant need not exhaust state remedies in order for the claim to accrue. *See Williams,* 558 F.2d at 670; *see also Meyer,* 550 F.2d at 728 (2d Cir.1977).[12]

---

**12.** Statutes of limitations in § 1983 actions are not tolled while the plaintiff litigates the claims in state court. *See Williams,* 558 F.2d at 673–674.

Plaintiff argues that her action did not accrue until either the May, 1995, Board vote or the Connecticut Supreme Court's decision in *Halpern II*, when it became clear that she would not be reinstated by the Board. However, the U.S. Supreme Court has held that the accrual of a cause of action occurs when the alleged discriminatory or unconstitutional act occurs, not when the effects of the act are complete. Thus, the statute of limitations commences to run on that date. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). In addition, "the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware State College v. Ricks*, 449 U.S. at 261, 101 S.Ct. 498. "The proper focus is upon the time of the acts, not upon the time at which the consequences of the acts became most painful." *Id.* at 258, 101 S.Ct. 498. (citations omitted).

The plaintiff in *Ricks* was a professor who was denied tenure by the defendant university in March 1974. In accordance with its usual procedure, after notifying plaintiff of its tenure decision, the university offered Ricks a one year "terminal" contract, which was to expire in June 1975. Ricks accepted the offer. In April 1975, he filed a charge of discrimination under Title VII [14] with the Equal Employment Opportunity Commission ("EEOC"). The Supreme Court held that this filing was not timely under Title VII.[15] It reasoned that the denial of tenure in 1974 was the act of alleged discrimination which started the statute of limitations, and that the eventual termination of employment was "a delayed, but inevitable, consequence of

the denial of tenure". 449 U.S. at 257–58, 101 S.Ct. 498.[16]

Even before *Ricks*, the U.S. Court of Appeals for the Second Circuit followed the same approach to accrual of actions under § 1983. In *Williams v. Walsh*, the plaintiff police officer was discharged for "conduct prejudicial to the good order and police discipline of the Department" following a hearing before the Board of Police Commissioners. A few days after his discharge, the plaintiff filed a complaint with the state court, appealing the decision of the Board to discharge him. Four years after his discharge, the state court dismissed his complaint. The plaintiff then brought a § 1983 action, claiming that the Board had violated his rights under the First, Fifth, and Fourteenth Amendments to the U.S.Constitution. The Second Circuit found that the § 1983 action accrued on the date of his discharge and that the pendency of the administrative appeal before the state court did not toll the statute. *Williams*, 558 F.2d at 676.

Similarly, in *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir.1993), the plaintiff bar owner brought a § 1983 action against the city for violation of his Fourteenth Amendment right to due process, based upon the revocation of his liquor license. The city liquor commission had revoked the license on September 1, 1988, but the revocation order was not executed until judicial review of the order was completed on July 27, 1989. The plaintiff brought his § 1983 action on November 15, 1990. The Seventh Circuit held that the action accrued on September 1, 1988, and was, therefore, barred by Illinois' two-year statute of limitations. Relying on *Ricks* and *Chardon*, the Court held that the state appeal had no effect on the date of the injury and that

---

14. 42 U.S.C. § 2000e *et. seq.*

15. Under Title VII, an EEOC complaint must be filed within 180 days of the alleged unlawful employment practice. *See* 42 U.S.C. 2000e–5(e)(1).

16. In *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981), the Supreme Court extended *Rick's*, holding that its reasoning applied to actions under § 1983 based upon wrongful termination. The Court found the case "indistinguishable" from *Ricks*. 454 U.S. at 8, 102 S.Ct. 28.

the accrual of the action was not delayed or tolled by it. 4 F.3d at 512–513. The Court reasoned that the property deprivation occurred when the license was ordered revoked, not when the commission executed the order. *Id.* at 513.

■ In the instant case, the plaintiff argues "as long as [she] held onto the possibility of reinstatement to her teaching position and the automatic reinstatement of salary and benefits, the constitutional deprivation at issue—the 'taking' of her property without due process of law—did not occur and the cause of action did not accrue." Plaintiff's Memorandum at 8. The plaintiff argues that her cause of action did not accrue until the Board acted on May 22, 1995, and, therefore, it is not barred by the three year statute of limitations.

The Court in *Halpern II,* however, recognized that "[i]n 1974 the plaintiff's employment contract was terminated for cause...." *Halpern,* 703 A.2d at 1144.[18] Moreover, consistent with Conn.Gen.Stat. § 10–151, the written decision of the Board terminating the plaintiff's contract was provided to the plaintiff on August 30, 1974. Indeed, the fact that the plaintiff was terminated on August 30, 1974, was never at issue in the state court proceedings.[19] Rather, the issue was whether the Board had provided the plaintiff with due process prior to terminating her employment contract. Accordingly, like the plaintiffs in *Ricks* and *Chardon,* her cause of action accrued on the date she received notice that her contract had been terminated—August 30, 1974.

The accrual of the plaintiff's claims did not depend upon establishing the illegality of the Board's action. The plaintiff, like the plaintiffs in *Williams* and *Kelly,* was not required to exhaust her state remedies or seek state judicial verification that her termination violated due process prior to bringing this action.

The relevant inquiry in determining whether a § 1983 action has accrued is an examination of when the alleged discriminatory act occurred. Here, although the plaintiff "held onto the possibility of reinstatement to her teaching position and the automatic reinstatement of salary and benefits" during the state court litigation, she knew of the alleged unlawful conduct at the time she was discharged on August 30, 1974. In each of her complaints and appeals seeking reversal of the Board's decision, she alleged that the Board violated her due process rights under the Fourteenth Amendment when it terminated her employment contract.[20]

The plaintiff also appears to claim now that her termination actually occurred on May 22, 1995, when the Board upheld her termination. That Board action was sustained by the Connecticut Superior Court and then the Connecticut Supreme Court in *Halpern II.* However, the plaintiff's argument fails to recognize that the Board's initial vote in 1974, although defective at that time, was the source of the claimed constitutional violation. Under *Ricks,* that was the point at which the alleged constitutional injury occurred and when her § 1983 cause of action accrued.

As the U.S. Supreme Court stated in *Ricks,* "the limitations period, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protects employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks,* 449 U.S.

---

**18.** The Court in *Lee* observed the same. *See Lee,* 181 Conn. 69, 434 A.2d 333, 335; *see also Halpern I,* 231 Conn. 308, 649 A.2d 534, 536 (same).

**19.** In her state complaints the plaintiff sought reversal of the "final" order of the Board terminating her employment contract.

**20.** Indeed, from time to time during the course of the state court litigation, in addition to alleging a violation of her due process rights under the Fourteenth Amendment, the plaintiff requested the same relief she now seeks in this Court—back pay and benefits.

at 256–57, 101 S.Ct. 498. To permit this action to begin some twenty-three years after the alleged unconstitutional act occurred would be an impermissible and unfair burden upon the Bristol Board of Education.

The defendant has established that this action accrued on August 30, 1974, and the plaintiff has failed to present any evidence which creates a genuine issue of material fact in that regard. Accordingly, the Court finds that the period of limitations began to run on August 30, 1974, the date upon which the plaintiff received notice of the decision of the Board to terminate her employment.

## D. The Continuing Violation Theory

■ The continuing violation theory provides that a statute of limitations does not begin to run until the last act alleged to be a part of an ongoing course of unlawful conduct occurs. *Doe v. Blake,* 809 F.Supp. 1020, 1025 (D.Conn.1992); *see also Cornwell v. Robinson,* 23 F.3d 694, 704 (2d Cir.1994).

■ However, "[a] continuing violation is occasioned by continuing unlawful acts, not continued ill effects from the original violation." *Doe,* 809 F.Supp. at 1025 (*quoting Ward v. Caulk,* 650 F.2d 1144, 1147 (9th Cir.1981)). When determining whether it is applicable in a particular case, "the emphasis is not upon the effects of earlier employment decisions, rather it is upon whether any present violation exists." *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (*quoting United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977)); *see also Deepwells Estates, Inc.,* 973 F.Supp. at 344. In this regard, "a wrongful termination does not by itself constitute an ongoing violation." *Richards v. New York State Department of Correctional Services,* 572 F.Supp. 1168, 1176 (S.D.N.Y.1983) (*citing Olson v. Rembrandt Printing Co.,* 511 F.2d 1228, 1234 (8th Cir.1975)). "Although the termination may have been an illegal

act, the resulting non-employment is merely a present, continuing effect not a present continuing violation." *Id.* (*citing, Ward,* 650 F.2d at 1147). Also, following termination of employment, an employer's refusal to grant reinstatement also does not constitute a continuing violation. *See West v. ITT Continental Baking,* 683 F.2d 845, 846 (4th Cir.1982).

■ The plaintiff argues that her case is not barred by the statute of limitations because the continuing violation theory applies. However, the plaintiff has not offered any evidence which demonstrates the existence of an ongoing course of conduct after August 30, 1974, the date she was terminated. The actions filed by her in the state trial court, the appeals to the Connecticut Supreme Court, the attempts of the Board to follow the instructions of the Connecticut Supreme Court following remand, the twenty-three years of non-employment, lost wages, and benefits, all are the continuing effects of the Board's decision to terminate her employment in 1974, not continuing allegedly unlawful acts by the Board.

The defendant has established that the § 1983 claim accrued on August 30, 1974. The plaintiff has failed to present any evidence which creates a genuine issue of material fact in that regard. Additionally, the defendant has established, as a matter of law, that there is no evidence of a continuing violation of the plaintiff's rights after August 30, 1974.

Accordingly, the § 1983 claims of the plaintiff are barred by the three year statute of limitations.

## E. The Breach of Contract Claim

■ The parties agree that breach of contract claims are subject to the six year statute of limitations set forth in Conn. Gen.Stat. § 52–576(a). A cause of action for breach of contract accrues when the breach occurs. *See Kennedy v. Johns–Manville Sales Corp.,* 135 Conn. 176, 62 A.2d 771, 773 (1948); *see also Engelman v.*

*Connecticut General Life Insurance Co.,* 240 Conn. 287, 690 A.2d 882, 886 (1997). As is the case with the accrual of § 1983 actions, the *Kennedy* and *Engelman* courts recognized that in breach of contract cases the action accrues when the plaintiff is injured and injury occurs when the breach occurs. *See Kennedy, id.; see also Engelman, id.* In the instant case, the injury complained of by the plaintiff occurred on August 30, 1974, when the Board terminated her employment, allegedly in breach of her employment contract. Accordingly, that is when her breach of contract action accrued.

For the reasons set forth above, the Court concludes that the plaintiff's breach of contract action accrued on August 30, 1974, and the continuing violation theory does not apply. Accordingly, the plaintiff's breach of contract claim is also barred by the six year statute of limitations.

### Conclusion

The plaintiff's action is barred by the applicable statutes of limitations. Accordingly, the defendant's motion for summary judgment [**Document # 7**] is **GRANTED** and the plaintiff's motion for summary judgment [**Document # 11**] is **DENIED.**